LIONEL Z. GLANCY (#134180)
MICHAEL GOLDBERG (#188669)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, California 90067
Telephone:   (310) 201-9150
Facsimile:    (310) 201-9160
E-mail:      info@glancylaw.com

*Attorneys for Plaintiff*
[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

PAUL H. VU, Individually and On
Behalf of All Others Similarly
Situated,

         Plaintiff,

         v.

RINO INTERNATIONAL
CORPORATION, ZOU DEJUN,
BEN WANG, YI LIU a/k/a JENNY
LIU, BRUCE RICHARDSON, YU
LI, QIU JIANPING, KENNITH C.
JOHNSON, QUAN XIE, ZEJIN LI
and WEIGUO ZHANG,

         Defendants.

Case No. **SACV10-01908AG(MLGx)**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

CLASS ACTION COMPLAINT

Plaintiff Paul H. Vu ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his Class Action Complaint against defendants, alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based on, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things: a review of the defendants' public documents; conference calls and announcements made by defendants; Securities and Exchange Commission ("SEC") filings; wire and press releases published by and regarding RINO International Corporation ("RINO" or the "Company"); securities analysts' reports and advisories about the Company; and information readily obtainable on the Internet.  Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a securities fraud class action on behalf of all persons or entities who purchased or otherwise acquired the securities of RINO during the period from May 15, 2008 through and including November 17, 2010 (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").  This class action is brought under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a); and SEC Rule 10b-5

promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.      RINO, through its subsidiaries, operates as an environmental protection and remediation company in the People's Republic of China.   The Company engages in designing, manufacturing, installing, and servicing wastewater treatment and flue gas desulphurization equipment primarily for use in the iron and steel industry; and anti-oxidation products and equipment for use in the manufacture of hot rolled steel plate products.

3.      On November 10, 2010, Muddy Waters LLC ("Muddy Waters"), a research firm issued a report calling into question, among others, the Company's customer relationships, accounting, and financial results.   The research firm claimed that its investigation indicated that RINO had fabricated customer relationships, exaggerated sales, and issued phony financial statements.   In particular, the report highlighted that the same day that RINO closed a $100 million financing transaction, certain officers/directors "borrowed" $3.2 million from the Company to purchase a luxury home in Orange County, California.

4.      On this news, shares of RINO declined by $2.34 per share, more than 15%, to close on November 10, 2010, at $13.18 per share, on unusually high volume.   The stock further declined another $2.08 per share, 15.08%, to close on November 11, 2010, at $11.10 per share after launching an internal review due to Muddy Waters' allegations.

5.     Then on November 15, 2010, RINO announced extremely disappointing third quarter 2010 results with revenues of $52.7 million and net income of $8.8 million, just over half the net income reported on the prior year. RINO also reduced its revenue forecast for 2010 from $221-$229 million to $203-$211 million.

6.     On this news, RINO's shares declined $3.46 per share, or more than 31%, to close on November 15, 2010, at $7.55 per share.

7.     On November 19, 2010, the Company disclosed receipt of a letter from its independent auditors, Frazer Frost LLP ("Frazer Frost"), revealing that at least two of the six contracts discussed by Muddy Waters were not entered and "there might be problems with 20 – 40%" of the other contracts.  Furthermore, Frazer Frost advised that its audit reports of the Company's previously issued financial statements for fiscal years 2008 and 2009 and its reviews of the Company's quarterly financial statements for periods between March 31, 2008 and September 30, 2010 should no longer be relied upon.  As a result, the Company further disclosed that "RINO's previously issued financial statements for the fiscal years ending December 31, 2008 and 2009, and the interim quarters ending March 31, 2008 through September 30, 2010, should no longer be relied upon."  Moreover, the interim quarterly unaudited financial statements in 2010

"should no longer be relied on inasmuch as such financial statements incorporate results from 2008 and 2009."

8.   When RINO's shares resumed trading on the OTC on December 8, 2010 after being halted by Nasdaq on November 17, 2010, the stock further declined $2.92 or 48% and closed at $3.15 per share.

9.   Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that the Company did not enter into at least two customer contracts and 20-40% of the Company's other contracts had problems for which it reported revenues during its 2008 and 2009 fiscal years; (2) that the Company's revenues reported to the SEC for fiscal year 2009 were inflated by 94%; (3) that the Company's management was draining cash from the Company for its own business and personal uses; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's financial results were materially false and misleading at all relevant times.

10.   As a result of defendants' wrongful acts and omissions, and the precipitous declines in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

13.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District.  Additionally, RINO's principal executive offices are located within this District.

14.     In connection with the challenged conduct, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

15.     Plaintiff Paul H. Vu, as set forth in the accompanying certification, incorporated by reference herein, purchased RINO securities during the Class

Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant RINO is a Nevada corporation with its principal executive offices located at 11 Youquan Road, Zhanqian Street, Jinzhou District, Dalian, People's Republic of China 116100.   At times relevant hereto, the Company maintains an office within this Judicial District at 30211 Banderas, Suite 200, Rancho Santa Margarita, California 92688.   The aggregate number of shares of RINO securities outstanding as of November 15, 2010 is approximately 28.6 million shares.   RINO's stock was actively traded on the Nasdaq Global Market ("Nasdaq") under the ticker "RINO" on July 13, 2009.   Prior to being listed on the Nasdaq, RINO was listed on the Over-the-Counter Bulletin Board ("OTCBB") under the symbol "JDMC."

17.     Defendant Zou Dejun ("Dejun") was, at all relevant times, the Company's President and Chief Executive Officer ("CEO") and a director of RINO.   Defendant Dejun is the founder of Dalian Rino Environment Engineering Science and Technology Co., Ltd. ("Dalian Rino") and has been a Director and its Chief Executive Officer since 2003.   He has also been a Director and the Chief Executive Officer of Dalian Innomind Environment Engineering Co., Ltd. ("Dalian Innomind") since July 2007.

18.    Defendant Ben Wang ("Wang") has served as the Company's Chief Financial Officer since April 2010.

19.    Defendant Yi Liu a/k/a Jenny Liu ("Liu") was the Company's Chief Financial Officer from June 2009 through April 2010.

20.    Defendant Bruce Richardson ("Richardson") was the Company's Chief Financial Officer and Secretary from September 2007 through September 2008.

21.    Defendant Yu Li ("Yu") has served as the Company's Chief Accounting Officer since November 2009 and its accounting manager since the Company's inception.

22.    Defendant Qiu Jianping ("Jianping") was, at all relevant times, the Company's Chairman of the Board of Directors and the Chief Financial Officer from September 2008 to June 2009.  Defendant Jianping has been a Director and Chairman of the Board of Dalian Rino since 2003.  Jianping is also a Director and Chairman of the Board of Dalian Innomind since July 2007.

23.    Defendant Kennith C. Johnson ("Johnson") was, at all relevant times, a director of RINO and the Chairman of the Company's Audit Committee.

24.    Defendant Quan Xie ("Xie") was, at all relevant times, a director of RINO.

25.     Defendant Zejin Li ("Li") has served as a director of the Company during the Class Period.

26.     Defendant Weiguo Zhang ("Zhang") served as a director of the Company from March 2008 through October 8, 2010.

27.     The defendants referenced above in ¶¶ 17-26 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

28.     RINO, through its subsidiaries, operates as an environmental protection and remediation company in the People's Republic of China. The Company engages in designing, manufacturing, installing, and servicing wastewater treatment and flue gas desulphurization equipment primarily for use in the iron and steel industry and anti-oxidation products and equipment for use in the manufacture of hot rolled steel plate products. Its products include the Lamella Inclined Tube Settler Waste Water Treatment System, which comprise industrial water treatment equipment, effluent-condensing equipment sets, solid and liquid abstraction dewatering equipment, and coal gas dust removal and cleaning equipment; the Circulating, Fluidized Bed, Flue Gas Desulphurization System that removes particulate sulphur from flue gas emissions generated by the sintering process in the production of iron and steel; and the High Temperature Anti-

Oxidation System for hot rolled steel, a set of products and a mechanized system that reduces oxidation-related output losses in the production of continuous cast hot rolled steel. In addition, the Company offers contract machining services for third-party industrial enterprises.

29.    RINO became a publicly traded corporation through a reverse merger with a shell company called Applied Biometrics. RINO operates through its subsidiary Innomind Group Limited, a British Virgin Islands corporation, and a variable interest entity ("VIE") called Dalian RINO.  Dalian RINO is owned by defendants Dejun and Jianping – husband and wife founders. RINO reported dramatically increasing revenues due to government-mandated pollution control standards, with revenues going from $63.4 million in fiscal 2007 to $192.6 million in fiscal 2009.

30.    Pursuant to an agreement dated October 5, 2007, 5,580,000 shares of RINO common stock beneficially owned by defendants Dejun and Jianping were deposited into an escrow account in order to secure RINO's obligation under the Securities Purchase Agreement and Make Good Escrow Agreement, dated October 5, 2007, among the Company and certain investors, pursuant to which RINO was required to deliver to such investors the shares in the escrow account in the event the Company failed to achieve certain after-tax income targets.

31.     Thus, defendants were motivated to report favorable results so as to receive millions of shares of RINO stock held in escrow.

**Defendants' False and Misleading Statements**

32.     On May 15, 2008, RINO issued a press release announcing its financial results for the first quarter ended March 31, 2008.   The Company reported a net income of $5.0 million, or $0.20 diluted earnings per share ("EPS") and revenue of $19 million for the first quarter 2008, as compared to a net income of $3.4 million, or $0.19 diluted EPS and revenue of $9.8 million for the same period of the prior year.

33.     On May 15, 2008, the Company filed a quarterly report on Form 10-Q for the first quarter ended March 31, 2008 with the SEC, which was signed by Defendant Richardson, and confirmed the Company's quarterly financial results and financial position.   In addition, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), the Form 10-Q contained signed certifications by Defendants Dejun and Richardson, stating that the financial information contained in the 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

34.     On August 14, 2008, the Company filed a quarterly report on Form 10-Q for the second quarter ended June 30, 2008 with the SEC, which was signed by Defendant Richardson, and confirmed the Company's quarterly financial

results and financial position.  In addition, pursuant to the SOX, the Form 10-Q contained signed certifications by Defendants Dejun and Richardson, stating that the financial information contained in the 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

35.    On August 15, 2008, RINO issued a press release announcing its financial results for the second quarter ended June 30, 2008.  The Company reported a net income of $11.2 million, or $0.44 diluted EPS and revenue of $34.6 million for the second quarter 2008, as compared to a net income of $3.8 million, or $0.21 diluted EPS and revenue of $18.7 million for the same period of the prior year.

36.    On November 11, 2008, RINO issued a press release announcing its financial results for the third quarter ended September 30, 2008.  The Company reported a net income of $15.7 million, or $0.62 diluted EPS and revenue of $44.9 million for the third quarter 2008, as compared to a net income of $4.3 million, or $0.24 diluted EPS and revenue of $17.6 million for the same period of the prior year.

37.    On November 12, 2008, the Company filed a quarterly report on Form 10-Q for the third quarter ended September 30, 2008 with the SEC, which was signed by Defendant Dejun, and confirmed the Company's quarterly financial

results and financial position.  In addition, pursuant to the SOX, the Form 10-Q contained signed certifications by Defendants Dejun and Jianping, stating that the financial information contained in the 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

38.   On February 17, 2009, the Company issued a press release announcing "that it expects fourth quarter 2008 revenues of at least $39 million, which represents approximately 125% growth compared to the fourth quarter of 2007 and exceeds previously issued guidance of $32 million to $33.5 million." Additionally, RINO announced its fiscal year 2009 guidance where it expects revenues to exceed $176 million which would represent approximately 28% growth over estimated 2008 revenues.   Defendant Dejun commented the following, in relevant part:

> We are extremely pleased with our results for 2008 and our ability to surpass previously issued guidance for the fourth quarter. In addition, we expect robust revenue growth to continue during 2009 supported by increased mandates, tax incentives and funding from the Chinese government to reduce sulphur emissions and improve energy efficiency and utilization for the iron and steel industry …. As key components of our product mix, we expect 2009 revenues for waste water treatment, desulphurization and anti-oxidation revenues to grow by approximately [10%, 50%], and 300%, respectively, compared with 2008 while maintaining a similar margin profile. Recent moves from the Chinese government, including monetary policy changes and the stimulus plan have provided the opportunity for better access to capital from local Chinese banks to support our growth objectives …. Improved working capital and our strong brand reputation,

coupled with stringent enforcement of government regulations and aggressive tax credits and funding for environment services, are the key essentials to drive incremental growth for RINO in 2009 its financial results for the fourth quarter and full year ended December 31, 2008.

39.     On March 31, 2009, the Company issued a press release announcing its financial results for the fourth quarter and full year ended December 31, 2008. The Company reported a net income of $7 million or $0.28 diluted EPS, and revenue of $40.8 million for the fourth quarter of 2009.   For the year, the Company reported a net income of $38.9 million, or $1.55 diluted EPS, and revenue of $139.3 million for 2008.

40.     On March 31, 2009, the Company filed an annual report on Form 10-K for the year ended December 31, 2008 with the SEC was signed by, Defendants Dejun, Jianping, Xie, Zhang and Johnson.   The Form 10-K confirmed the Company's 2008 financial results and financial position.   In addition, pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), the Form 10-K contained signed certifications by Defendants Dejun and Jianping, stating that the financial information contained in the 10-K was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

41.     On May 15, 2009, RINO issued a press release announcing its financial results for the first quarter ended March 31, 2009.   The Company reported a net income of $12.5 million, or $0.50 diluted EPS and revenue of $35.6

million for the first quarter 2009, as compared to a net income of $5.0 million, or $0.20 diluted EPS and revenue of $19 million for the same period of the prior year.

42.     On May 15, 2009, the Company filed a quarterly report on Form 10-Q for the first quarter ended March 31, 2009 with the SEC, which was signed by Defendant Dejun, and confirmed the Company's quarterly financial results and financial position.  In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Dejun and Jianping, stating that the financial information contained in the 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

43.     On August 10, 2009, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2009.  The Company reported a net income of $9.9 million or $0.39 diluted EPS, and revenue of $40.7 million for the quarter, as compared to a net income of $11.2 million, or $0.44 diluted EPS and revenue of $34.6 million for the same period of the prior year.

44.     On August 10, 2009, the Company filed a quarterly report on Form 10-Q for the second quarter ended June 30, 2009 with the SEC, which was signed by Defendants Dejun and Liu, and confirmed the Company's quarterly financial results and financial position.  In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Dejun and Liu, stating that the

1  financial information contained in the 10-Q was accurate, and that they disclosed

2  any material changes to the Company's internal control over financial reporting.

3
4          45.    On November 13, 2009, the Company issued a press release

5  announcing its financial results for the third quarter ended September 30, 2009.

6
7  The Company reported a net income of $19.7 million or $0.78 diluted EPS, and

8  revenue of $63.3 million for the third quarter of 2009, as compared to a net

9  income of $15.7 million or $0.62 diluted EPS, and revenue of $44.9 million for

10
11  the same period for the prior year.

12          46.    On November 13, 2009, the Company filed a quarterly report on

13
14  Form 10-Q for the third quarter ended September 30, 2008 with the SEC, which

15  was signed by Defendant Dejun.   The Form 10-Q confirmed the Company's

16
17  quarterly financial results and financial position.   In addition, pursuant to SOX,

18  the Form 10-Q contained signed certifications by Defendants Dejun and Liu,

19  stating that the financial information contained in the 10-Q was accurate, and that

20
21  they disclosed any material changes to the Company's internal control over

22  financial reporting.

23          47.    On December 7, 2009, RINO completed its definitive agreements

24
25  with several institutional investors for a registered direct offering of nearly 3.3

26  million shares of common stock to raise capital of approximately $100 million.

27
28

The Company reported proceeds of this transaction would be used for working capital requirements.

48.     On March 31, 2010, the Company issued a press release announcing its financial results for the fourth quarter and full year ended December 31, 2009. The Company reported a net income of $13.5 million or $0.53 diluted EPS, and record revenue of $53 million for the fourth quarter of 2009, as compared to a net income of $7 million or $0.28 diluted EPS, and revenue of $40.8 million for the same period of the prior year.  For the year, the Company reported net income of $57.3 million, or $2.26 diluted EPS, and revenue of $192.6 million, as compared to a net income of $38.9 million, or $1.55 diluted EPS, and revenue of $139.3 million for 2008.

49.     On March 31, 2010, the Company filed an annual report on Form 10-K for the year ended December 31, 2009 with the SEC, which was signed by Defendants Dejun, Liu, Yu, Jianping, Xie, Zhang and Johnson.  The Form 10-K confirmed the Company's 2009 financial results and financial position.   In addition, pursuant to SOX, the Form 10-K contained signed certifications by Defendants Dejun, Yu and Liu, stating that the financial information contained in the 10-K was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

50.     The Form 10-K represented the following concerning the Company's predictability of RINO's earnings:

> Accordingly, environmental protection and remediation is a relatively new industry in the PRC.  Nonetheless, like the Chinese economy, it is rapidly growing – we estimate that in the next 5 years, there is a wastewater remediation market of $260 million per year and the desulphurization market will grow at approximately 5% annually. Further, the market for the Company's products is highly regulated by the central PRC government, which sets specific pollution output targets for industrial enterprises. For this reason, we believe that the demand for our products is predictable, and will follow the growth of the PRC's iron and steel industry and government-mandated pollution control standards that are being made more stringent annually. We also believe that our revenue and profitability growth to date arises from these same factors. Our revenues increased by 38.3% to $192.6million in fiscal year 2009 and by 119.8% to $139.3 million for fiscal year 2008 from $63.4 million in fiscal year 2007. Our gross profit increased by 33.1% to $72.3million in fiscal year 2009, compared to an increase of 78.3% to $54.3 million in fiscal year 2008 and the gross profit of $30.5 million for fiscal year 2007. Our income from operations increased by 142.9% to $55.3million in fiscal year 2009 and by 44.0% to $22.8 million in fiscal year 2008 from $15.8 million. Our after-tax net income increased by 165.0% to $56.4million and 108.3% to $21.3 million in fiscal years 2009 and 2008, respectively, compared to that of $10.2 million in fiscal year 2007.

51.     On May 14, 2010, the Company filed a quarterly report on Form 10-Q for the first quarter ended March 31, 2010 with the SEC, which was signed by Defendant Dejun.  The Form 10-Q confirmed the Company's quarterly financial results and financial position.  In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Dejun and Wang, stating that the

financial information contained in the 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

52.     On May 17, 2010, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2010.  The Company reported a net income of $8.5 million, or $0.30 diluted EPS, and revenue of $47.9 million for the quarter ended March 31, 2010, as compared to a net income of $12.5 million, or $0.50 diluted EPS, and revenue of $35.6 million in the same period of the prior year.

53.     On August 16, 2010, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2010.  The Company reported a net income of $15.5 million, or $0.54 diluted EPS, and revenue of $65.4 million for the quarter ended June 30, 2010, as compared to a net income of $11.7 million, or $0.47 diluted EPS for the same period of the prior year.

54.     Defendant Dejun commented the following in relevant part:

> We are pleased to announce strong results for the second quarter 2010 …. The robust year-over-year revenue increase was primarily driven by steady growth in our two main business segments, core flue gas desulphurization and waste water treatment systems. Going forward, the primary objective for our core business segments is to continue expanding our market share and enhance gross margin. At the same time, we will build out other business segments that are synergistic extensions of our core competence. Municipal sludge treatment, for instance, is an area of our near-term focus.

China's clean technology industry is growing rapidly with government support. Policies and guidelines that call for increasingly stricter standards for industrial waste treatment continuously drive up demand for a greater scope of treatments as well as volume. RINO's future success depends on our ability to continue enhancing our production capacity and technological capability to keep up with industry developments. We are confident that with our focused efforts on these fronts and effective execution we will continue to be a leading player in the industry of our fundamental business segments and successfully expand into high growth segments in the future.

55.     Defendant Wang commented the following in relevant part:

Both top and bottom line results were very strong in the second quarter and we are on track to achieve our targets for fiscal year 2010. For the rest of the year we will continue to enhance operational systems while investing for sustainable growth in the long term. We are also progressing according to our schedule to further strengthen our internal control and to continue to comply with Sarbanes Oxley requirements.

56.     On August 16, 2010, the Company filed a quarterly report on Form 10-Q for the second quarter ended June 30, 2010 with the SEC, which was signed by Defendant Dejun.   The Form 10-Q confirmed the Company's quarterly financial results and financial position.   In addition, pursuant to SOX, the Form 10-Q contained signed certifications by Defendants Dejun and Wang, stating that the financial information contained in the 10-Q was accurate, and that they disclosed any material changes to the Company's internal control over financial reporting.

57.    The statements referenced above in ¶¶32 – 46; 48 - 56 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them that: (1) that the Company did not enter into at least two customer contracts and 20-40% of the Company's other contracts had problems for which it reported revenues during its 2008 and 2009 fiscal years; (2) that the Company's revenues reported to the SEC for fiscal year 2009 were inflated by 94%; (3) that the Company's management was draining cash from the Company for its own business and personal uses; (4) that the Company lacked adequate internal and financial controls; and (5) that, as a result of the foregoing, the Company's financial results were materially false and misleading at all relevant times.

## The Truth Begins to Emerge

58.    On November 10, 2010, Muddy Waters published a research report on RINO.  The report concluded the following:

> RINO claims to be the leader in selling desulfurization ("FGD") and other environmental equipment to Chinese steel mills. It reported 2009 revenue of $193 million. In reality its revenue is under $15 million, and its management has diverted tens of millions of dollars for its own use. We value RINO based on the cash we believe remains in the company after the most recent raise.

- RINO's FGD sales (60% to 75% of revenue) are much lower than it claims. We found that many of its customer relationships do not exist.

- Chinese regulatory filings show that RINO's consolidated 2009 revenue was only $11 million, or 94.2% lower than it reported in the US. We show that the Chinese numbers are credible.

- RINO's accounting has serious flaws that are clear signs of cooked books.

- RINO's management is draining cash from the company for its own business and personal uses. The management is in flagrant breach of its VIE agreements, which require it to pay income to RINO (as opposed to taking it).

- RINO's balance sheet has an astonishingly small amount of tangible assets for a manufacturer. Rather, it is filled with low quality "paper" assets that balance out the inflated earnings, and likely hide leakage.

- RINO is not the industry leader it claims to be in the steel sinter FGD system market. Rather, it is an obscure company in a crowded field, and is best known for its failed projects. Its reported margins are two to three times what they really are. Its technology is sub-par.

- We are not sanguine about management "borrowing" $3.2 million to purchase a luxury home in Orange County, CA the day that RINO closed its $100.0 million financing.

59.    On this news, RINO shares plummeted $2.34 per share, or more than 15%, to close on November 10, 2010, at $13.18 per share, on unusually high volume.

60.    On November 11, 2010, the Company issued a press release commenting on Muddy Waters allegations, by saying that the Company "takes its responsibilities to investors very seriously and has launched an internal review of Muddy Waters' allegations."

61.    On this news, shares of RINO declined $2.08 per share or more than 15%, to close on November 11, 2010, at $11.10 per share, on unusually high volume.

62.    On November 15, 2010, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2010. The Company reported revenues of $52.7 million and net income of $8.8 million, or $0.31 diluted EPS, just over half the net income reported on the prior year. RINO also reduced its revenue forecast for 2010 from $221-$229 million to $203-$211 million.

63.    Thereafter, an analyst at Canaccord Genuity cut its rating on RINO to "Sell," citing the allegations of fraud and the Company's initiation of an internal review.

64.    On this news, RINO shares declined $3.46 per share, or more than 31%, to close on November 15, 2010, at $7.55 per share, on unusually high volume.

65.   On November 16, 2010, after the market closed, the Company postponed a previously scheduled earnings conference call after consulting with the chairman of the Company's audit committee.

66.   On November 17, 2010, RINO shares declined an additional $1.08 before it was halted by Nasdaq, at $6.07 per share.

67.   On November 19, 2010, the Company filed a Form 8-K with the SEC disclosing that the Company's independent auditors, Frazer Frost delivered a letter ("Auditor's Letter") to the Company and each of its directors.   The Auditor's Letter states in part:

> In a telephone conversation on November 16, 2010, Mr. Zou Dejun, the Chief Executive Officer of the Company, informed Ms. Susan Woo of our firm, in substance, that as to the six RINO customer contracts discussed in the recent report of Muddy Waters LLC, the Company did not in fact enter into two of the six purported contracts, and a third contract among the six was explainable. When Ms. Woo inquired about the Company's other contracts, Mr. Zou said he was not sure, but there might be problems with 20 - 40% of them. Assuming that these statements were reasonably accurate, it appears that our reports would have been affected if this information had been known to us at the date of our reports, although the effect on the financial statements is currently unknown and cannot be quantified without a thorough investigation. We further note that in a conversation the following day, November 17, 2010, involving Ms. Woo, several directors of the Company, Company counsel, and Mr. Zou, Mr. Zou stated that he was not sure the day before and went back to look into some things, and found that apart from the two problematic contracts, all other contracts are legitimate and can be verified.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> The auditing standards of the Public Company Accounting Oversight Board provide procedures to be followed by an auditor to prevent continued reliance on audit reports in such circumstances. In view of the information provided by Mr. Zou Dejun, we hereby advise the Company to promptly notify any person or entity that is known to be relying upon or is likely to rely upon our audit report(s) for the periods ended December 31, 2008 and December 31, 2009 and reviewed quarterly financial statements for periods between March 31, 2008 to September 30, 2010 that they should no longer be relied upon, and that revised financial statements and revised auditor's report(s) will be issued upon completion of an investigation.

68.     In another Form 8-K filed with the SEC on November 19, 2010, the Company disclosed that RINO's previously issued financial statements for the fiscal years ending December 31, 2008 and 2009, and the interim quarters ending March 31, 2008 through September 30, 2010, should no longer be relied upon.  In addition, the Company's interim unaudited financial statements for the periods March 31, 2010, June 30, 2010 and September 30, 2010 should no longer be relied on inasmuch as such financial statements incorporate results from 2008 and 2009. The Company came to this conclusion based on statements made by Defendant Dejun who reported to the Board that the Company "did not enter into two contracts for which it reported revenue during" the Company's 2008 and 2009 fiscal years.

69.     On December 2, 2010, the Company announced that the Nasdaq delisted RINO's stock on the following grounds:

- The Company's announcement that its previously filed financial reports for fiscal 2008, 2009 and year-to-date 2010 could no longer be relied upon;
- The Company's admission that it had not entered into certain previously disclosed contracts; and
- The Company's failure to respond to the NASDAQ staff's request for additional information regarding allegations raised by the Muddy Waters, LLC report.

70.    Also, on December 2, 2010, the Company announced that the SEC is conducting a formal investigation relating to the Company's financial reporting and compliance with the Foreign Corrupt Practices Act for the period January 1, 2008 through the present.

71.    When the RINO's shares resumed trading on December 8, 2010 on the OTC, the stock further declined $2.92 or 48% and closed at $3.15 per share.

## CLASS ACTION ALLEGATIONS

72.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf a Class of all persons who purchased or acquired RINO securities during the Class Period (the "Class"). Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

73.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, RINO securities were

actively traded on the Nasdaq or the OTCBB.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by RINO or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

74.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

75.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

76.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;
- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of RINO;

- whether the Individual Defendants caused RINO to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of RINO securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

77.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.    Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

78.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- RINO securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the Nasdaq or the OTCBB, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold RINO securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

79.   Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## CLAIMS FOR RELIEF

## COUNT I

**(Against All Defendants For Violations of
Section 10(b) And Rule 10b-5 Promulgated Thereunder)**

80.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

81.   This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

82.   During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of RINO securities; and (iii) cause Plaintiff and other members of the Class to purchase RINO securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

83.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for RINO securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about RINO's finances and business prospects.

84.    By virtue of their positions at RINO, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other

members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

85. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of RINO securities from their personal portfolios.

86. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of RINO, the Individual Defendants had knowledge of the details of RINO internal affairs.

87. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of RINO. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate

timely, accurate, and truthful information with respect to RINO's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of RINO securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning RINO's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased RINO securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities, and/or upon statements disseminated by defendants and were damaged thereby.

88.    During the Class Period, RINO securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of RINO securities at prices artificially inflated by defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased said shares, or would not have purchased them at the inflated prices that were paid.  At the time of the purchases by Plaintiff and the Class, the true value of RINO securities were substantially lower than the prices paid by Plaintiff and the other members of the Class.  The

market price of RINO securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

89.     By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

90.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## COUNT II

### (Violations of Section 20(a) of the
### Exchange Act Against The Individual Defendants)

91.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

92.     (a)     During the Class Period, the Individual Defendants participated in the operation and management of RINO, and conducted and participated, directly and indirectly, in the conduct of RINO's business affairs. Because of their senior positions, they knew the adverse non-public information about RINO's misstatement of income and expenses and false financial statements.

(b)     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to RINO's financial condition and results of operations, and to promptly correct any public statements issued by RINO which had become materially false or misleading.

(c)     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which RINO disseminated in the marketplace during the Class Period concerning RINO's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause RINO to engage in the wrongful acts complained of herein.  The Individual Defendants therefore, were "controlling persons" of RINO within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of RINO securities.

93.     Each of the Individual Defendants, therefore, acted as a controlling person of RINO.  By reason of their senior management positions and/or being directors of RINO, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause RINO to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised

control over the general operations of RINO and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

94.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by RINO.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Awarding compensatory damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs;

D.     Awarding rescissionary damages; and

1    E.    Awarding such equitable, injunctive or other relief as this Court

2  may deem just and proper.

3

## DEMAND FOR TRIAL BY JURY

4

5    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

6  hereby demands trial by jury of all issues that may be so tried.

7

8  DATED:  December 15, 2010          Respectfully submitted,

9                                     GLANCY BINKOW & GOLDBERG LLP

10

11                                    By:
                                      Michael Goldberg (#188669)
12                                    Lionel Z. Glancy (#134180)
                                      1801 Avenue of the Stars, Suite 311
13                                    Los Angeles, CA 90067
                                      Telephone: (310) 201-9150
14                                    Facsimile:  (310) 201-9160
15                                    Email:  info@glancylaw.com

16                                    POMERANTZ HAUDEK
17                                      GROSSMAN & GROSS LLP
                                      Marc I. Gross
18                                    Fei-Lu Qian
19                                    100 Park Avenue, 26th Floor
                                      New York, New York 10017
20                                    Telephone: (212) 661-1100
                                      Facsimile:  (212) 661-8665
21
22
                                      POMERANTZ HAUDEK
23                                      GROSSMAN & GROSS LLP
24                                    Patrick V. Dahlstrom
                                      10 South LaSalle Street, Suite 3505
25                                    Chicago, IL 60603
                                      Telephone: (312) 377-1181
26                                    Facsimile:  (312) 377-1184
27
28                                    *Counsel for Plaintiffs*

CLASS ACTION COMPLAINT
35

### CERTIFICATION PURSUANT
### TO FEDERAL SECURITIES LAWS

1. I, _PAUL H. VU_, make this declaration pursuant to Section 21D(a)(2) of the Securities Exchange Act of 1934 as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against RINO International Corporation ("RINO"), and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase RINO securities at the direction of plaintiffs counsel or in order to participate in any private action arising under the Securities Exchange Act of 1934.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased RINO during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in RINO securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed ___12 | 14 | 2019___ at   ___San Jose, Calif___
         (Date)                      (City, State)

                                    _____
                                    (Signature)

                                    ___PAUL  H. VU___
                                    (Type or Print Name)

## SUMMARY OF PURCHASES AND SALES

| DATE | PURCHASE OR SALE | NUMBER OF SHARES | PRICE PER SHARE |
|---|---|---|---|
| 11/03/10 | PURCHASE | 700.00 | 16.046 |
| 11/08/10 | PURCHASE | 500.00 | 16.196 |
| 11/11/10 | SALE | 400.00 | 10.714 |
| 11/11/10 | SALE | 800.00 | 10.711 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV10- 1908 AG (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** 312 N. Spring St., Rm. G-8 Los Angeles, CA 90012 | [X] **Southern Division** 411 West Fourth St., Rm. 1-053 Santa Ana, CA 92701-4516 | [ ] **Eastern Division** 3470 Twelfth St., Rm. 134 Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Michael Goldberg (#188669)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL H. VU, Individually and On Behalf of All Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>RINO INTERNATIONAL CORPORATION,<br><br>[See Attachment for Additional Defendants]<br>DEFENDANT(S). | CASE NUMBER<br><br>**SACV10-01908** AG (MLGx)<br><br><br>**SUMMONS** |

TO:    DEFENDANT(S): <u>All Named Defendants</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Michael Goldberg_____, whose address is _1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067, Tel. (310) 201-9150____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: **DEC 15 2010** _____

By: _____
  (Deputy Clerk)

  (Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                                **SUMMONS**

Name & Address:
Michael Goldberg (#188669)
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL H. VU, Individually and On Behalf of All Others Similarly Situated,<br><br>PLAINTIFF(S)<br><br>v.<br><br>RINO INTERNATIONAL CORPORATION,<br><br>[See Attachment for Additional Defendants]<br>DEFENDANT(S). | CASE NUMBER<br><br>**SACV10-01908 AG(MLGx)**<br><br><br><br>**SUMMONS** |

TO:    DEFENDANT(S): <u>All Named Defendants</u>

A lawsuit has been filed against you.

    Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, <u>Michael Goldberg</u>_____, whose address is <u>1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067, Tel. (310) 201-9150</u>.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

**DEC 1 5 2010**

Dated: _____

Clerk, U.S. District Court

**JULIE PRADO**

By: _____
        Deputy Clerk

        *(Seal of the Court)*

**SEAL**

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                             SUMMONS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>SUMMONS</u>**

[Attachment of Additional Defendants]

ZOU DEJUN, BEN WANG, YI LIU a/k/a JENNY LIU, BRUCE RICHARDSON, YU LI, QIU JIANPING, KENNITH C. JOHNSON, QUAN XIE, ZEJIN LI and WEIGUO ZHANG.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
PAUL H. VU, Individually and On Behalf of All Others Similarly Situated,

**DEFENDANTS**
Rino International Corporation, Zou Dejun, Ben Wang, Yi Liu a/k/a Jenny Liu, Bruce Richardson, Yu Li, Qiu Jianping, Kennith C. Johnson, Quan Xie, Zejin Li and Weiguo Zhang.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Michael Goldberg
GLANCY BINKOW & GOLDBERG LLP
1801 Avenue of the Stars, Suite 311, Los Angeles, CA 90067  T. (310) 201-9150

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No          ☑ **MONEY DEMANDED IN COMPLAINT: $** To be Proved

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Sections 10-b and Rule 10b(5) and 20A of the 1934 Securities Exchange Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☑ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**SACV10-01908**

**FOR OFFICE USE ONLY:**   Case Number:

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                               CIVIL COVER SHEET                               Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

VIII(a).  IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

VIII(b).  RELATED CASES: Have any cases been previously filed in this court that are related to the present case?  ☐ No   ☑ Yes
If yes, list case number(s):  SACV10-1754-CJC(RNBx)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☑ A.  Arise from the same or closely related transactions, happenings, or events; or
                  ☑ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                  ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                  ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

IX. VENUE:  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Santa Clara County, CA |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Jinzhou District, China |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County, CA |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date December 15, 2010

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |